United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARKER WEST INTERNATIONAL, LLC, | No. C-08-2810 EMC |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| CLEAN UP AMERICA, INC., *et al.*, | |
| Defendants. | **(Docket No. 51)** |
| _____/ | |

Currently pending before the Court is Plaintiff Parker West International, LLC's ("PWI") motion for default judgment. At a status conference held on May 20, 2009, the Court granted PWI's request for entry of default and gave Defendants Clean Up America, Inc. and Clean Up America Franchise Development Corporation (collectively, "CUA") until June 22, 2009, to locate new counsel, have new counsel file an appearance, move to set aside the entry of default, and oppose PWI's motion for default judgment. *See* Docket No. 55 (amended civil minutes). The Court warned CUA that, if it failed to do the above, then the Court would move forward with PWI's motion for default judgment.

CUA failed to take any action by June 22, 2009, as ordered. Accordingly, PWI asked the Court to grant its motion for default judgment. The Court set a hearing for PWI's motion and asked PWI to provide supplemental information. For the reasons discussed below, the Court **GRANTS** PWI's motion.

///

///

///

## I. FACTUAL & PROCEDURAL BACKGROUND

In its complaint, PWI alleges that it is the owner of a United States Patent No. 5,979,012 which is an invention concerning waste water treatment. *See* Compl. ¶¶ 8-9. According to PWI, on or about August 18, 2003, PWI and CUA entered into a Licensing and Cross Marketing Agreement ("LCM Agreement"), pursuant to which CUA was given a nonexclusive license and distributorship to use and sell the technology set forth in the '012 patent. *See* Compl. ¶ 13. In return, CUA was required to pay PWI a royalty arising from the use or sale of equipment incorporating the technology set forth in the '012 patent. *See* Compl. ¶ 14.

According to PWI, CUA breached the LCM Agreement (1) "by failing by pay royalties due . . . under the agreement" and (2) by failing "to properly market and sell the PWI Technology as required by the agreement." Compl. ¶ 30.

PWI goes on to allege that, after the LCM Agreement expired on or about August 18, 2006, *see* Compl. ¶ 17, CUA continued to sell equipment incorporating the technology set forth in the '012 patent, thus infringing PWI's patent rights. *See* Compl. ¶¶ 18-19.

Based on the above allegations, PWI has pled both a claim for breach of contract and a claim for patent infringement. PWI has also pled claims for fraud, breach of the covenant of good faith and fair dealing, intentional and negligent interference with prospective business advantage, and a violation of California Business & Professions Code § 17200.

CUA timely answered PWI's complaint. However, shortly thereafter, CUA's counsel moved to withdraw from the case. In its order granting counsel's motion, the Court explained to CUA that, as a corporation, it had to be represented by counsel. The Court gave CUA until May 11, 2009, to hire counsel and have counsel make an appearance in the case and specifically warned CUA that, if it failed to do so, then PWI could move for entry of default. *See* Docket No. 45 (order, filed on 2/11/2009).

CUA did not take any action by May 11 as ordered by the Court. Accordingly, PWI moved for entry of default and further moved for a default judgment. Thereafter, the Court entered CUA's default and gave CUA until June 22, 2009, to locate new counsel, have new counsel file an

2

appearance, move to set aside the entry of default, and oppose PWI's motion for default judgment. *See* Docket No. 55 (amended civil minutes).

Again, CUA failed to take any action by the date ordered by the Court. PWI therefore asked the Court to proceed with its motion for default judgment. In response to an order asking for supplemental briefing, PWI indicated that, although it had initially sought a default judgment on each of the claims asserted in the complaint, it was now limiting its motion for default judgment to the following causes of action only: patent infringement, fraud, and intentional and negligent interference with prospective business advantage. PWI also scaled back its request for damages. While it had sought at the outset more than $10 million, PWI now asks for damages (excluding attorney's fees) of approximately $250,000.

## II.   DISCUSSION

Under Federal Rule of Civil Procedure 55, a default judgment is an available remedy to a plaintiff when the defendant has "failed to plead or otherwise defend" the lawsuit. Fed. R. Civ. P. 55(a).

A.   Adequacy of Service of Process

In deciding whether to grant or deny a default judgment, a court must first "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). In the instant case, there does not appear to be any issue regarding proper service. As noted above, CUA timely answered the complaint. The Court therefore concludes that service of process was properly effected on CUA.

B.   Failure to Plead or Otherwise Defend

As stated above, under Rule 55, a default judgment is an available remedy to a plaintiff when the defendant has "failed to plead or otherwise defend" the lawsuit. Fed. R. Civ. P. 55(a). In the instant case, CUA did initially defend the action, filing, for example, an answer as well as a motion to quash (which was subsequently withdrawn). However, after CUA's counsel withdrew from the case, CUA was obligated to obtain counsel to represent it, which it did not do. CUA was well aware of the Court's orders requiring an appearance of counsel as its president, William Clemons,

participated in the hearing on CUA's counsel's motion to withdraw, *see* Docket No. 44 (amended civil minutes, filed on 2/11/2009), as well as the status conference in which the Court granted PWI's request for entry of default. *See* Docket No. 55 (amended civil minutes). Accordingly, the Court finds that CUA has failed to defend the lawsuit thereby giving PWI the right to seek a default judgment.

C.      *Eitel* Analysis

As noted above, the Court entered a default against CUA, more specifically on May 20, 2009. *See* Docket No. 55 (amended civil minutes); *see also* Docket No. 54 (order, filed on 5/21/2009). Upon entry of default, a party may move for a default judgment. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Factors that a court may consider in exercising that discretion include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the plaintiff's complaint will, as a general matter, be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). A court, however, retains the authority to require a plaintiff to "establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2)(C) (also giving a court the authority to "investigate any other matter" in order to enter or effectuate judgment).

In the instant case, the majority of factors weigh in favor of a default judgment. For example, if the motion for default judgment were to be denied, then PWI would likely be without a remedy. CUA has been given multiple opportunities to participate in this litigation but has failed to do so. *See Walters v. Shaw/Guehnemann Corp.*, No. C 03-04058 WHA, 2004 U.S. Dist. LEXIS 11992, at *7 (N.D. Cal. Apr. 15, 2004) ("To deny plaintiff's motion [for default judgment] would leave them without a remedy. Prejudice is also likely in light of the merits of their claims."); *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion

for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Also, although CUA filed an answer to PWI's complaint, thereby disputing the validity of PWI's claims, CUA has made no attempt to counter the evidence offered by PWI that CUA did infringe the patent at issue. *See, e.g.*, Docket No. 66 (Fritz Decl. ¶ 3) ("I participated in design and manufacturing discussions with Mr. Clemons for the Swabby 48 [an accused product], which incorporated our patented mobile wastewater treatment system, utilizing the clay floculent (a polymer/clay formula flocculent) to use as a prototype for sales. I inspected that Swabby 48 as well as the Swabby Mother Ship [another accused product], also manufactured and sold by [CUA]. These cleaning systems . . . incorporate our patented wastewater reclamation treatment system."). Thus, the possibility of a dispute concerning material facts is small. Finally, there is no indication that CUA's default was due to excusable neglect, especially taking into account Mr. Clemons's participation in this litigation as noted above.

The only *Eitel* factors that deserve closer analysis are the second and third factors -- *i.e.*, the merits of PWI's substantive claims and the sufficiency of the complaint. These factors basically "require that a plaintiff state a claim on which the [plaintiff] may recover." *Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). As indicated above, PWI indicated in supplemental papers that the only causes of action on which it was proceeding were the claims for patent infringement, fraud, and intentional and negligent interference with prospective business advantage. Each of these claims is addressed below.

1. <u>Patent Infringement</u>

As stated above, upon entry of default, the factual allegations of the plaintiff's complaint will, as a general matter, be taken as true, except for those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). A court, however, retains the authority to require a plaintiff to "establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2)(C) (also giving a court the authority to "investigate any other matter" in order to enter or effectuate judgment).

In the instant case, the complaint clearly contains sufficient allegations of patent infringement. PWI alleges that it is the owner of the '012 patent and that CUA infringed the patent

5

when it continued to sell equipment incorporating the technology set forth in the patent after the parties' LCM Agreement expired. *See* Compl. ¶¶ 8, 13-19.

In support of its motion for default judgment, PWI has also offered evidence to support its claim of infringement. Most notably, PWI has provided a detailed claim chart supporting its contention that two of CUA's products – *i.e.*, the Swabby 48 and the Swabby Mother Ship – infringe many of the claims asserted the '012 patent.[1] *See* Docket No. 56 (Beam Decl., Ex. A) (claim chart). In addition, PWI has submitted a declaration from Gary Fritz, the inventor of the '012 patent, in which he states:

> I participated in design and manufacturing discussions with Mr. Clemons for the Swabby 48, which incorporated our patented mobile wastewater treatment system, utilizing the clay floculent (a polymer/clay formula flocculent) to use as a prototype for sales. I inspected that Swabby 48 as well as the Swabby Mother Ship, also manufactured and sold by [CUA]. These cleaning systems . . . incorporate our patented wastewater reclamation treatment system.

Docket No. 66 (Fritz Decl. ¶ 3). Without a valid license from PWI, CUA infringed on PWI's patent by selling the accused products.

Based on the allegations in the complaint and the supporting evidence for the motion for default judgment, the Court concludes that there is sufficient evidence to support PWI's claim of patent infringement.

2.   Fraud

Under California law, "[t]he elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1255 (2009). In its complaint, PWI alleges that CUA committed fraud in two ways: (1) by "intentionally misrepresent[ing] its intent to pay compensation to plaintiff" (presumably, under the LCM Agreement) and (2) by "intentionally misrepresent[ing] its intent to participate in or facilitate the sale of the PWI Flocculent." Compl. ¶¶ 33-34.

---

[1] According to PWI, claims 1, 2, and 9-11 are infringed by both the Swabby 48 and the Swabby Mother Ship. Claims 3-4, 12-13, 15, and 18 are infringed by the Swabby Mother Ship. PWI does not contend that claims 5-8, 14, 16, 17, or 19 are infringed. *See* Docket No. 56 (Beam Decl., Ex. A) (claim chart).

1    Pursuant to its authority under Rule 55(b)(2)(C), the Court ordered PWI to "provide specific,
2  competent evidence to support the claim" for fraud.  Docket No. 61 (Order at 3).  In response, all
3  that PWI offered was a conclusory statement from its president that "I do not believe that Clemons
4  ever intended to pay PWI for any of the royalties or other monies owed under the Agreement we
5  made."  Docket No. 65 (Parker Decl. ¶ 5).  This evidence is not sufficient to establish a prima facie
6  case of fraud.  Moreover, at the hearing on the motion, PWI effectively conceded that the claim was
7  not viable or, at the very least, that it did not intend to press forward with the claim.

    3.    <u>Intentional Interference with Prospective Business Advantage</u>

    The elements of intentional interference with prospective economic advantage in California are:

> (1) a relationship between the plaintiff and some third party with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) a wrongful act, apart from the interference itself, by the defendant designed to disrupt the relationship[2]; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Salma v. Capon*, 161 Cal. App. 4th 1275, 1290 (2008).

In the instant case, the Court does not award a default judgment on the intentional interference claim for two reasons.  First, in its complaint, PWI failed to allege all of the elements of the claim – more specifically, the element that CUA engaged in a wrongful act apart from the interference itself.  *See* Compl. ¶¶ 43–46.  Although PWI has now submitted evidence in support of its motion for default judgment that suggests that the wrongful act was CUA's misrepresentation to third-party customers that it owned the patented technology at issue, *see, e.g.*, Docket No. 70 (MacLean Decl. ¶ 7) (noting that CUA presented itself "as the owner of the technology covered by the Patent granted to [PWI]"), that is not enough to cure the deficiency in PWI's pleading.

---

[2] The California Supreme Court explained in *Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376 (1995), that a plaintiff must plead that "the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself."  *Id.* at 393.  "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.  [A]n act must be wrongful by some legal measure, rather than merely a product of an improper, but lawful, purpose or motive."  *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1545 (2007) (internal quotation marks omitted).

Second, for a claim of intentional interference, "[t]here can be no recovery unless the plaintiff shows that, except for the tortious interference, there was a reasonable probability that the contract or profit would have been obtained," 5 Witkin, Summ. of Cal. Law, Torts § 745; *see also Parlour Enters., Inc. v. Kirin Group, Inc.*, 152 Cal. App. 4th 281, 294 (2007) (noting that one element of tort of intentional interference is "proximate causation, i.e., a reasonable probability the lost economic advantage would have been realized but for the defendant's wrongful acts"); *Wilson v. Loew's*, 142 Cal. App. 2d 183, 190 (1956) (noting that "[t]he general rule is that before recovery can be had for interference with and loss of a future or prospective contract or business relationship, it must appear that such contract or relationship would otherwise have been entered into"), and, there is not sufficient evidence of such proximate causation. Simply because the third-party customers bought equipment from CUA that contained PWI's patented technology does not mean that, in the absence of CUA's actions, those customers would have bought waste water treatment equipment from PWI as opposed to another company. In fact, at the hearing, PWI admitted that it did not have any marketable product to sell to CUA's customer.

4. <u>Negligent Interference with Prospective Economic Advantage</u>

The elements for a claim of negligent interference are similar to the elements for a claim of intentional interference. *See* CACI 2204. As with an intentional interference claim, a negligent interference claim requires, *inter alia*, that (1) the plaintiff and a third party have been in an economic relationship that probably would have resulted in a future economic benefit to the plaintiff and that (2) the defendant have engaged in wrongful conduct independent of the interference. *See id.*; *see also* 5 Witkin, Summ. of Cal. Law, Torts § 571 (noting that "[d]amages are recoverable for [such] negligence where there is a special relationship despite lack of contractual privity"). Accordingly, the negligent interference claim is defective for the same reasons as stated above, and the Court denies default judgment as to this claim.

D. <u>Relief</u>

For the reasons stated above, the Court grants PWI's motion for default judgment with respect to the patent infringement claim, but not the fraud and interference claims. Turning to the issue of relief, PWI asks for both an injunction as well as damages and attorney's fees.

8

### 1. Injunctive Relief

> A court *may* enjoin ongoing patent infringement after considering traditional principles of equity. To receive injunctive relief, [a patent holder] must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

*Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 965-66 (N.D. Cal. 2009) (Whyte, J.) (emphasis in original); *see also* 35 U.S.C. § 283 (providing that a court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable"). The Supreme Court has rejected the Federal Circuit's jurisprudence holding that patent holders are presumptively entitled to injunctions. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006).

In the instant case, PWI has not specifically addressed the above four factors in arguing that it is entitled to a preliminary injunction. However, PWI has submitted declarations from its president, which state, *inter alia*, that "PWI has been precluded from operating its business as a result of CUA's interference with clients and potential clients," Docket No. 53 (Parker Decl. ¶ 10); that "CUA has continued since the notifications of infringement to manufacture and distribute unauthorized and infringing product," Docket No. 53 (Parker Decl. ¶ 14); that "PWI has been irreparably harmed and has suffered impairment of the value of its '012 Patent rights." Docket No. 53 (Parker Decl. ¶ 14); and that "CUA still maintains a website advertising our product and continues to seek sales of the patented technology" even after PWI sent CUA cease-and-desist letters and filed this lawsuit. Docket No. 64 (Parker Decl. ¶ 9). This is sufficient for the Court to issue an injunction against CUA.

The Court therefore enjoins (1) CUA; (2) its officers, agents, servants, employees, and attorneys; and (3) other persons who are in active concert or participation with CUA or the persons listed above from making, importing, using, offering to sell, or selling any product (including without limitation the two accused products, the Swabby 48 and the Swabby Mother Ship) that infringes the '012 patent.

2. <u>Damages</u>

    a. <u>Compensatory Damages</u>

The Patent Act provides that, "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 28 U.S.C. § 284. In the instant case, PWI has provided competent evidence that, after the LCM Agreement expired in August 2006, CUA made at least seven sales.

- In 2007, CUA sold two Swabby Mother Ships to Robert MacLean. *See* Docket No. 70 (MacLean Decl. ¶ 3). Each machine was sold for $125,000.
- In 2007 and 2008, CUA sold two Swabby 48s to Michael Diglio. Each machine sold for $65,000. *See* Docket No. 67 (Diglio Decl. ¶ 3).
- In 2008, CUA sold a Swabby 48 to Douglas Sauder. The machine was sold for $150,000. *See* Docket No. 68 (Sauder Decl. ¶ 3).
- In 2008, CUA sold two Swabbys to a person or entity residing in Las Vegas. *See* Docket No. 68 (Sauder Decl. ¶ 3).

PWI claims that at least one more sale was made, *see* Docket No. 68 (Supp. Br. at 8) (claiming that eight infringing sales were made), which is substantiated by the Diglio declaration.[3] *See* Docket No. 67 (Diglio Decl. ¶ 3) ("I was told by William Clemons when I bought the second Swabby that he had sold three more of these units in another state in 2008.").

PWI goes on to argue that it is a fair assumption that CUA made $848,000 from the eight sales. *See* Docket No. 64 (Parker Decl. ¶ 6). This is a reasonable assumption. The evidence described above indicates that CUA earned $530,000 for five sales – *i.e.*, an average of $106,000 per machine. $106,000 x 8 machines = $848,000.

PWI also argues that it is a fair assumption that CUA would have made at least a 10% profit on sales – *i.e.*, $84,800. PWI's rationale here is that, under the LCM Agreement, CUA was willing

---

[3] The Court notes that, often, there are in the supporting declarations references to sales made by CUA but *when* the sales took place is not clear – and this is critical information because there could be infringement only after the LCM Agreement expired.

10

1  to pay PWI a royalty of up to 10% for the sale of any CUA equipment that incorporated PWI's
2  patented technology.  *See* Docket No. 64 (Parker Decl. ¶ 6).  If CUA was willing to pay a royalty of
3  up to 10%, then its actual profit margins had to have been greater.  The Court finds this assessment
4  reasonable and therefore concludes that 10% of $848,000 -- *i.e.*, $84,800 -- is a fair award to
5  compensate PWI for the infringement.

### b. Treble Damages

Under the Patent Act, a "court may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  "Willfulness of the infringement is the sole basis for the court's exercise of its discretion to enhance damages under 35 U.S.C. § 284 (1988)."  *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995); *see also Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 593 F. Supp. 2d 1088, 1112 (N.D. Cal. 2009) (Spero, J.) (noting that § 284 "gives courts discretion to award damages up to three times the amount assessed by the jury where there has been a finding of willfulness").

> The Federal Circuit has articulated the following factors to consider on enhancement:
>
> (1) whether the infringer deliberately copied the ideas or design of another;
>
> (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed;
>
> (3) the infringer's behavior as a party to the litigation;
>
> (4) Defendant's size and financial condition;
>
> (5) Closeness of the case;
>
> (6) Duration of defendant's misconduct;
>
> (7) Remedial action by the defendant;
>
> (8) Defendant's motivation for harm;
>
> (9) Whether defendant attempted to conceal its misconduct.

*Informatica Corp. v. Business Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075, 1084 (N.D. Cal. 2007) (Laporte, J.).

In the instant case, there is sufficient evidence to support a finding of willfulness. Most notably, there is what appears to be a CUA advertisement for the Swabby 48 which specifically states that the machine uses "Patented Parker West Wastewater Treatment System." Docket No. 64 (Parker Decl., Ex. B). Moreover, as noted above, PWI has submitted a declaration from the inventor of the '012 patent, in which he states:

> I participated in design and manufacturing discussions with Mr. Clemons for the Swabby 48, which incorporated our patented mobile wastewater treatment system, utilizing the clay floculent (a polymer/clay formula flocculent) to use as a prototype for sales. I inspected that Swabby 48 as well as the Swabby Mother Ship, also manufactured and sold by [CUA]. These cleaning systems . . . incorporate our patented wastewater reclamation treatment system.

Docket No. 66 (Fritz Decl. ¶ 3).

Because the above evidence is sufficient to establish that CUA's infringement of the patent at issue was willful, the Court concludes that treble damages -- *i.e.*, damages in the amount of $254,400[4] -- are appropriate.

### 3. Attorney's Fees

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "A court's decision to grant attorneys' fees in a patent case requires a two-step process. First, the prevailing party must prove by clear and convincing evidence that the case was exceptional." *Applied Materials, Inc. v. Multimetrixs, LLC*, No. C 06-07372 MHP, 2009 U.S. Dist. LEXIS 44061, at *6-7 (N.D. Cal. May 26, 2009). Second, "[i]f the case is found to be exceptional, then a court should determine whether a fee award is appropriate." *Id.* at *7.

In the instant case, the Court finds that the case is exceptional based on the willful infringement by CUA. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 956 (N.D. Cal. Mar. 3, 2009) (noting that, in determining whether a case is exceptional, a court may consider factors such as whether "the infringer engaged in litigation misconduct, advanced frivolous arguments, or willfully infringed the patent"); *see also Funai*, 593 F. Supp. 2d at 1117 (stating that "[a] finding of willfulness is a sufficient basis for an award of attorneys' fees under § 285"; adding

---

[4] 3 x 84,800 = $254,400.

12

that, "[w]hile the district court is not required to award attorneys' fees where such a finding has been made, it is an abuse of discretion to deny attorneys' fees in cases of willful infringement unless the court explains why the case is not exceptional"). For the same reasons, the Court finds that a fee award is appropriate.[5] *See Applied Materials*, 2009 U.S. Dist. LEXIS 44061, at *7 (stating that, "[w]ith respect to determining whether a fee award is appropriate, a court should weigh factors such as degree of culpability, closeness of the questions, and litigation behavior").

The only question remaining for the Court is whether the fees requested by PWI are reasonable. PWI seeks an award of $91,678.90. *See* Docket No. 65 (Beam Decl. ¶¶ 2-3). These fees were incurred over the course of (approximately) a year and a half. However, since February 2009 (*i.e.*, for about half a year), there has been limited litigation in this case because CUA's counsel withdrew and CUA failed to hire a new attorney to represent it.

Based on the Court's review of the record, the hourly rates, ranging from $300 to $400, are reasonable. *See* Docket No. 65 (Beam Decl. ¶ 4). But the same cannot be said with respect to the number of hours expended on the case. Most notably, counsel spent more than 70 hours on the motion for default judgment. Although the Court acknowledges that preparation of the claim chart in support of the motion for default judgment required a not insignificant amount of time, the 70-plus hours are still problematic. That more time was spent on the motion than necessary is evident from the fact that the initial papers filed in support of the motion for default judgment were deficient, particularly with respect to proof of damages in the amount of $10 million. Only after the Court sought additional information from PWI did PWI scale back on its request for damages (as well as on the claims for which it sought a default judgment).

---

[5] In the instant case, PWI argues that it is entitled to attorney's fees based on the willful infringement as well as alleged litigation misconduct. Although the charge of litigation misconduct is not without any basis, the Court is not inclined to find that this is a case where the misconduct has reached such a level that it should be deemed exceptional. Although it does appear that CUA failed to produce documents that it promised it would provide (*e.g.*, for mediation), *see* Docket No. 65 (Beam Decl. ¶ 6), this case largely seems to have stalled because CUA's counsel withdrew and CUA failed to hire a new attorney to represent it. There is insufficient evidence that CUA, *e.g.*, persistently refused to respond to formal discovery propounded on it. *Compare Realtech Semiconductor Corp. v. Marveol Semiconductor, Inc.*, No. C-04-4265 MMC, 2005 WL 3634617, at *3 (N.D. Cal. Nov. 21, 2005) (indicating that plaintiff "refused to provide answers to interrogatories and deliberately prolonged discovery as to the relevant invention date of the '608 patent").

13

The Court also notes that counsel billed a number of hours regarding the bankruptcy proceeding initiated by Mr. Clemons. Although the Court understands that the bankruptcy proceeding had some relationship with this case, it is not clear that all of the hours were necessarily justified since Mr. Clemons is not a defendant in the case at bar.

Because there is evidence establishing that not all hours are warranted, the Court concludes that a 10% reduction with respect to the fee request is appropriate. *Cf. Moreno v. City of Sacramento*, 534 F.3d 1106, 1112, 1116 (9th Cir. 2008) (stating that "the district court can impose a small reduction, no greater than 10 percent -- a 'haircut' -- based on its exercise of discretion and without a more specific explanation"). The Court therefore awards fees in the amount of $82,511.01.[6]

### III.   CONCLUSION

For the foregoing reasons, the Court grants PWI's motion for default judgment. PWI is entitled to damages in the amount of $254,400 and attorney's fees in the amount of $82,511.01. In addition, the Court enjoins (1) CUA; (2) its officers, agents, servants, employees, and attorneys; and (3) other persons who are in active concert or participation with CUA or the persons listed above from making, importing, using, offering to sell, or selling any product (including without limitation the two accused products, the Swabby 48 and the Swabby Mother Ship) that infringes the '012 patent.

This order disposes of Docket No. 51.

IT IS SO ORDERED.

Dated: September 1, 2009

EDWARD M. CHEN
United States Magistrate Judge

---

[6] 90% x 91,678.90 = $82,511.01.

**United States District Court**
For the Northern District of California

| | |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | NORTHERN DISTRICT OF CALIFORNIA |

PARKER WEST INTERNATIONAL, LLC,           No. C-08-2810 EMC

       Plaintiff,

     v.

                                      **CERTIFICATE OF SERVICE**

CLEAN UP AMERICA, INC., *et al.*,

       Defendants.
_____/

       I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

| | |
|---|---|
| Clean Up America Franchise Development Corporation<br>William Clemons<br>1500 Skyline Circle<br>Chesapeake, Virginia 22320<br>757/328-6108<br><br>cuainc@aol.com<br>info@cleanupamerica.com | Clean Up America Inc.<br>William Clemons<br>1500 Skyline Circle<br>Chesapeake, Virginia 22320<br>757/328-6108<br><br>cuainc@aol.com<br>info@cleanupamerica.com |

Dated: September 1, 2009          RICHARD W. WIEKING, CLERK


                                       By: _____/s/_____
                                               Leni Doyle
                                               Deputy Clerk